---



**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: February 19, 2026**

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **IN RE:** | **UNLIMITED DELIVERIES, LLC** | **CHAPTER 11** |
| | **Debtor** | **CASE NO. 26-50139-KMS** |

## FINAL ORDER GRANTING DEBTOR'S FIRST AMENDED AND SUPPLEMENTAL MOTION TO CONTINUE WITH FACTORING AND FINANCING ARRANGEMENT

THIS MATTER, having come regularly before the Court for a final hearing on February 19, 2026, upon the *First Amended and Supplemental Motion to Continue with Factoring and Financing Arrangement* (the "Motion") **[DK #41]**, filed herein by Unlimited Deliveries, LLC (the "Debtor") to approve post-petition accounts receivable financing by Gulf Coast Bank & Trust Company, d/b/a Phoenix Capital Group and/or its affiliates or subsidiaries ("Gulf Coast" or "Secured Party") and the granting of security interests under Section 364 of the Bankruptcy Code, and it appearing that the entry of this Interim Order is essential to the continued orderly operation of the Debtor's business and is in the best interest of the Debtor and the Debtor's estate, the following findings of fact, and being advised in the premises, the Court is of the opinion that the Motion should be granted.

1. Notice and a hearing were adequate and appropriate under the circumstances.

2. On or about January 28, 2026 (the "Petition Date"), the Debtor filed its Voluntary Petition for relief pursuant to Chapter 11 of Title 11 of the United States Code.

3. This Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105, 363, 364, 541, 1107, 1109, related statutes, related rules and various orders of reference.  This is a core proceeding.

4. The Debtor previously filed its original "*Emergency Motion to Continue with Factoring and Financing Arrangement*" **[DK #9]** (the "Emergency Motion") on January 28, 2026.  The Court granted the Emergency Motion by *Interim Order* **[DK #32]** entered on January 30, 2026.  The order granting the Emergency Motion provided that it was to be noticed to creditors and parties-in-interest with a hearing scheduled thereon, if necessary, for February 19, 2026.  The budget attached to the Emergency Motion and that was approved by the order was limited for a twenty-one (21) day period.  The Motion (that is, the instant Motion) seeks to extend the factoring and financing arrangement for an additional thirteen (13) weeks from and after the expiration of the order granting the Emergency Motion.

5. Debtor's representative testified as follows:

a. The Debtor and Secured Party are parties to a factoring agreement, as well as subsequent restatements and amendments (the "Pre-Petition Agreement" and also, upon entry of this Order, the "Agreement"), copies of which were attached to the Emergency Motion as Exhibits "A" and "B" and are incorporated herein by reference, pursuant to which the Secured Party made credit accommodations to Debtor on a secured and factored basis.  The Pre-Petition Agreement governs the relationship of the parties.  There are actually two factoring agreements: the "main" factoring agreement is with the Debtor.  The "second" factoring agreement is with MK Logistics, LLC, a related entity.  The second agreement is an accommodation to a large customer who only wanted

one agreement with MK Logistics, LLC.  MK Logistics, LLC provides its invoice to the Secured Party, who then "factors" that account receivable.  That "factored" money then ends up with the Debtor.

b. The Pre-Petition Agreement provides for advances by Secured Party to the Debtor, so long as such advances do not cause the ratio of the Debtor's obligations to Secured Party to the value (as determined in the Pre-Petition Agreement) of the Debtor's eligible (as determined in the Pre-Petition Agreement) Accounts (as that term is defined in the Uniform Commercial Code and the Pre-Petition Agreement) to exceed that set forth in the Pre-Petition Agreement (the "Formula").

c. As of the Petition Date, the Debtor was indebted to the Secured Party (on "its" contract) in the amount of at least $3,450,038.55 secured by the collateral described in the Pre-Petition Agreement, and on MK Logistics, LLC, it owes $969,143.93.

d. The Debtor has assigned and sold its Accounts to Secured Party under the Pre-Petition Agreement and Secured Party has agreed to consider making purchases of eligible Accounts (as determined in Secured Party's sole discretion) from the Debtor pursuant thereto.

e. The Debtor represented that it is unable to obtain unsecured credit allowable under 11 U.S.C. Section 503(b)(1) as an administrative expense, or other than pursuant to 11 U.S.C. § 364(c), and the Debtor represented it is unable to obtain credit on terms equal to or more favorable than those proposed by Secured Party.

f. Secured Party has agreed to consider providing financial accommodations through the purchase of Accounts from the Debtor in accordance with the Agreement and within the meaning of 11 U.S.C. § 364(e), and the creditors the Court required to be noticed were either notified of the Motion, as evidenced by the certificate of service, or were present at this Court's hearing on the Motion.

**The Court finds:**

6. Good cause exists for approval of the Debtor's agreement for financing by Secured Party under the terms of the Agreement on an interim basis, the entry of this Order will minimize disruption of the Debtor as a "going concern" and is in the best interest of the Debtor, its creditors and the estate.  The terms upon which the Debtor is authorized to utilize cash advances are fair under the circumstances.

7. The Debtor has provided written notice of the filing of the Motion to Secured Party, the United States Trustee, the twenty (20) largest unsecured creditors of the Debtor, all of the Debtor's secured creditors, and all parties who filed requests for notice as evidenced by the certificate of service filed by the Debtor's counsel with this Court, which notice this Court finds to be appropriate and adequate under Federal Rules of Bankruptcy Procedure 2002 and 4001, and as required by Section 364 of the Bankruptcy Code.

8. An urgent situation exists because the Debtor is unable to make payroll and pay essential expenses, coming due, absent continuation of the factoring arrangement.  Pursuant to the Motion, the Debtor provided a budget prior to the hearing on the Motion and a copy of the budget is attached, incorporated by reference and marked as **Exhibit "A"**.  The Debtor is authorized to not only factor its accounts receivable in the ordinary course of business with Secured Party, it is authorized to utilize the funds generated thereby in its trucking business, subject to the budget, and the line-by-line items that are set forth in Exhibit "A."

9. This is a final order.  Pursuant to the applicable Local Rules and Local Rule 4001-1(b)(1)(B), all rights are reserved as to the validity, extent and priority of the purported security interests of Secured Party.  However, the approval of the continuation of the factoring arrangement, from the

4

filing of the Motion, through and including the expiration of the thirteen (13) week budget, is final and shall not be reversed, modified or otherwise altered, except by agreement of the parties.

10. The Motion is granted, accordingly.

11. All capitalized terms used in this Order, not otherwise defined herein and unless otherwise indicated, shall have the meaning given them in the Pre-Petition Agreement or the Bankruptcy Code.

12. The Debtor is authorized, effective immediately, to sell its Accounts, as that term is defined in the Pre-Petition Agreement and Uniform Commercial Code, to the Secured Party on a secured basis subject to the terms of the Agreement, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder.

13. The Debtor is authorized and empowered to incur secured indebtedness to Secured Party pursuant to this Order and the Pre-Petition Agreement in such amounts as needed in the ordinary course of its business and not for any purpose prohibited by law.

14. Attached hereto as **Exhibit "A"** is a cash budget prepared by the Debtor, reflecting its anticipated cash income and expenses for the periods reflected therein (the "Budget").   In all likelihood, the Debtor will seek to expand its Budget as needs arise in the future, subject to notice and a hearing.

15. On or before the fourth (4th) Friday of each month, the Debtor shall submit to Secured Party a comparison of all items set forth in the Budget (or any future budget), with the actual performance of the Debtor for the same period, showing for each item, the dollar and the percentage variation. An adverse variation in any item of more than 11% shall constitute a default under the Agreement.

16. The Debtor shall submit new budgets, (the "New Budgets") from time to time to Secured Party, so that Secured Party is in possession of a budget covering at least sixty (60) days into the future.  In the event that said budget reflects an excess of cash outflow over cash income during the period that it covers, Secured Party may declare the Pre-Petition Agreement to be in default.

17. Pursuant to Section 364(c)(2) of the Bankruptcy Code, the Secured Party is granted a senior security interest in the collateral as set forth in the Pre-Petition Agreement, effective as of the date of the filing of the bankruptcy case ("Collateral"), as collateral for all present and future obligations of the Debtor to Secured Party, including Secured Party's attorneys' fees and expenses incurred in connection with the negotiation, documentation, closing and enforcement of the Pre-Petition Agreement and the protection of Secured Party's rights in this bankruptcy case (the "Obligations"), subject to Paragraph 9 above. The security interest in the Collateral shall be senior to all other liens in the Collateral except those for unavoidable validly perfected pre-petition liens, subject to Paragraph 9 above.

18. The liens granted to Secured Party herein are deemed validly granted, duly attached, and properly perfected, without the need of any additional actions being taken by or on behalf of Secured Party, including but not limited to, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event Secured Party does make such a filing or recordation, the Debtor shall execute all documents required by Secured Party to do so, subject to Paragraph 9 above.

19. The Debtor is authorized to ratify, and is deemed to have so ratified, the Pre-Petition Agreement.  The Secured Party may collect any pre-petition Accounts which it purchased under the Agreement.

20. For administrative convenience, Secured Party may record the pre-petition transactions and the post-petition transactions arising under the Agreement in one account, and apply payments on a "first in, first out" basis.

21. The Debtor may use the proceeds of any advance under the Agreement only in accordance with the Budget.

22. Nothing in the Pre-Petition Agreement, or in any of the documents executed in connection therewith or this Order, shall give this Court the authority to require Secured Party to make purchases of the Debtor's Accounts, such being in the sole discretion of Secured Party.

23. The Secured Party is hereby afforded the protection of Section 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order.  The Secured Party is a good faith lender.

24. The Debtor shall comply with all provisions of the Pre-Petition Agreement but for any sections pertaining to insolvency warranties or the filing of a bankruptcy petition.

25. To the extent that any provision of the Pre-Petition Agreement shall cause the Debtor to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by Secured Party.

26. The Debtor shall not grant to any party any interest in the Collateral or priority in payment prior to or equal with the liens or priority in payment hereby being accorded to Secured Party. Debtor has agreed that it will not seek to surcharge the Secured Party or its Collateral unless it has obtained the Secured Party's prior written consent.

27. The entry of this Order and execution, delivery, and performance under the Agreement, or under any other documents executed in connection therewith, do not constitute a compromise, waiver, or other relinquishment of any right of Secured Party at law, in equity or otherwise,

7

including, but not limited to, any right of Secured Party to request and to obtain relief under the Bankruptcy Code.

28. The automatic stay provisions of 11 U.S.C. § 362 are lifted and terminated to enable Secured Party to implement the provisions of this Order and otherwise thereby to permit Secured Party to demand and receive collections on account of the Collateral, and to apply those collections to the Obligations.

29. The Pre-Petition Agreement is enforceable according to its terms and nothing contained therein is unlawful, unenforceable or violative of any usury or similar statute.

30. An event of default under this Order ("Default") shall include the following:

a. The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Order;

b. Except for any existing defaults, the Debtor's failure to perform or comply with any of the terms, conditions, or covenants of the Pre-Petition Agreement;

c. The termination of this Order by its own terms, operation of law or Court order;

d. The dismissal of this bankruptcy case;

e. The appointment of a trustee under the Bankruptcy Code;

f. A material change in the Formula; and

g. The conversion of the bankruptcy case to a case under another chapter of the Bankruptcy Code.

31. Upon the occurrence of a Default, Secured Party shall provide the Debtor and its counsel written notice of such Default to the Debtor and counsel for the Debtor.  If the Default is a type that is not curable, or is curable by the Debtor and the Debtor fails to cure the Default within three

(3) business days from the time of service of such notice of the Default, all of the following shall be deemed to have occurred unless otherwise waived by Secured Party in writing:

a. Secured Party's consent regarding the Debtor's use of the cash collateral pursuant to this Order is terminated without further notice;

b. The Debtor shall not use any cash collateral for any purpose;

c. The Debtor shall not seek authority to use any cash collateral; and

d. The Debtor shall hold and segregate all cash collateral in trust for Secured Party.

32. This Order is without prejudice to Secured Party's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Agreement, and any other applicable agreement or law, including without limitation to seek relief from the automatic stay and/or to seek adequate protection with respect to matters not covered by this Order, to seek an injunction, and/or to object to applications for allowance and/or payment of compensation of professionals employed by the Debtor or its estate.  Secured Party's acceptance and/or application of any payments by the Debtor, and the Debtor's payments to Secured Party pursuant to this Order, shall not be deemed or construed as evidence or an admission of value of the Collateral (in connection with Sections 362 or 506 or otherwise), and shall not constitute a waiver of its rights to claim the difference, if any, between any payments received by Secured Party and the actual contractual amounts due under the Agreements.

33. Accordingly, the Motion is hereby granted as set forth herein.

**# # END OF ORDER # #**

SUBMITTED BY:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:    UNLIMITED DELIVERIES, LLC                          CHAPTER 11
          Debtor                                    CASE NO. 26-50139-KMS

# EXHIBIT "A"

| 13 Weeks Budget | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | 13 Weeks Total |
| | 02/20/26-02/26/26 | 02/20/26-03/05/26 | 03/06/26-03/12/26 | 03/13/26-03/19/26 | 03/20/26-03/26/26 | 03/27/26-04/02/26 | 04/03/26-04/09/26 | 04/10/26-04/16/26 | 04/17/26-04/23/26 | 04/24/26-04/30/26 | 05/01/26-05/07/26 | 05/08/26-05/14/26 | 05/15/26-05/21/26 | |
| **Revenue** | $ 800,000.00 | $ 800,000.00 | $ 800,000.00 | $ 700,000.00 | $ 820,000.00 | $ 820,000.00 | $ 650,000.00 | $ 820,000.00 | $ 820,000.00 | $ 820,000.00 | $ 820,000.00 | $ 820,000.00 | $ 820,000.00 | $ 10,310,000.00 |

| Expense | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fuel for Company Vehicles | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 2,600,000.00 |
| Auto Liability Insurance | | | $ 185,000.00 | | | | $ 185,000.00 | | | | $ 185,000.00 | | | $ 555,000.00 |
| Umbrella (Customers specific) | | | $ 7,288.45 | | | | | $ 7,288.45 | | | | $ 7,288.45 | | $ 21,865.35 |
| 2025 Insurance Audit Balance | $ 37,044.59 | | | | | | | | | | | | | $ 37,044.59 |
| Cargo and Ph Damage | | | | $ 77,323.74 | | | | $ 77,323.74 | | | | $ 77,323.74 | | $ 231,971.22 |
| WC Insurance | | $ 22,000.00 | | | $ 22,000.00 | | | | | | $ 22,000.00 | | | $ 66,000.00 |
| Operating Repairs and Maintenance | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 975,000.00 |
| Road Tolls | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 117,000.00 |
| Truck Driver Labor | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 2,600,000.00 |
| Advertising & Marketing | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 130,000.00 |
| Bank Charges and Fees | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 13,000.00 |
| Factoring Fee | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 7,350.00 | $ 8,610.00 | $ 8,610.00 | $ 6,825.00 | $ 8,610.00 | $ 8,610.00 | $ 8,610.00 | $ 8,610.00 | $ 8,610.00 | $ 8,610.00 | $ 108,255.00 |
| Hotels and Travel for Employees | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 117,000.00 |
| Damaged Goods | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 52,000.00 |
| Insurance Deductibles/Reserves | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 260,000.00 |
| Employees Screening | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 26,000.00 |
| Meals and Entertainment | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 26,000.00 |
| Business Vehicles 1 (under personal Credit) | | $ 2,879.91 | | | | $ 2,879.91 | | | | $ 2,879.91 | | | | $ 8,639.73 |
| Business Vehicles 2 (under personal Credit) | | $ 1,952.80 | | | | | $ 1,952.80 | | | | $ 1,952.80 | | | $ 5,858.40 |
| Business Vehicles Insurance | | | $ 790.37 | | | | | | | | | | | $ 790.37 |
| Facilities Rent & Lease | | $ 11,000.00 | | | $ 11,000.00 | | | | | | $ 11,000.00 | | | $ 33,000.00 |
| Office Supplies and Software | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 13,000.00 | $ 169,000.00 |
| Operating Supplies | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 65,000.00 |
| Other Miscellaneous Expense | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 6,500.00 |
| After hours Dispatch Service | | $ 13,500.00 | | | $ 13,500.00 | | | | | | $ 13,500.00 | | | $ 40,500.00 |
| Safety Compliance Service | | $ 7,000.00 | | | $ 7,000.00 | | | | | | $ 7,000.00 | | | $ 21,000.00 |
| Commission Based Drivers Recruiter | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 20,800.00 |
| Accounting and other Professional Services | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| Driver, dispatchers and Managers Bonus | $ 1,000.00 | $ 1,000.00 | $ 10,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 10,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 10,000.00 | $ 1,000.00 | $ 1,000.00 | $ 40,000.00 |
| Health Insurance | | $ 9,000.00 | | | | $ 9,000.00 | | | | | $ 9,000.00 | | | $ 27,000.00 |
| Taxes | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 58,500.00 |
| Wages | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 520,000.00 |
| Supplies and Materials | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 104,000.00 |
| Taxes and Licenses | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 30,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 54,000.00 |
| Utilities | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 39,000.00 |
| **Total Expense** | $ 657,044.59 | $ 687,332.71 | $ 822,078.82 | $ 696,273.74 | $ 620,210.00 | $ 685,589.91 | $ 842,377.80 | $ 704,822.19 | $ 620,210.00 | $ 623,089.91 | $ 878,662.80 | $ 704,822.19 | $ 620,210.00 | $ 9,162,724.66 |

| **Net Cash Flow (Estimated)** | $ 142,955.41 | $ 112,667.29 | $ (22,078.82) | $ 3,726.26 | $ 199,790.00 | $ 134,410.09 | $ (192,377.80) | $ 115,177.81 | $ 199,790.00 | $ 196,910.09 | $ (58,662.80) | $ 115,177.81 | $ 199,790.00 | $ 1,147,275.34 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|